UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

DONNA P. HINES,                    )
                                   )
        Plaintiff,                 )
                                   )        No. 6:17-CV-160-HAI
v.                                 )
                                   )        MEMORANDUM OPINION
NANCY A. BERRYHILL, *Acting        )                &
Commissioner of Social Security*,  )             ORDER
                                   )
        Defendant.                 )
                                   )

                        ***   ***   ***   ***

## I. Procedural History and ALJ Decision

On April 30, 2014, Plaintiff Donna Hines protectively filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income. D.E. 11-1 at 102, 115, 116.[1] The Social Security Administration denied the claims initially and upon reconsideration. *Id*. at 113, 129. On September 10, 2014, Plaintiff requested a hearing, which occurred in Lexington, Kentucky, on January 6, 2016. *Id*. at 38, 145, 160. Administrative Law Judge ("ALJ") Davida H. Isaacs heard testimony from an impartial vocational expert ("VE"), Joyce P. Forrest, and from Plaintiff, who was represented by counsel. *Id*. at 39, 195, 310.

Under 20 C.F.R. §§ 404.1520 and 416.920, the ALJ conducts a five-step analysis to evaluate a disability claim.[2] The ALJ followed these procedures in this case. *See* D.E. 11-1 at 22-32.

---

[1] This is Plaintiff's second application for disability benefits. Her first was filed on February 22, 2013, and the initial application was denied on April 25, 2013. D.E. 11-1 at 103. There is no evidence in the record that her first application was appealed or that the current matter is a request to reopen it. *Id*. (indicating status of first application as "Closed").

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

At the first step, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since January 2, 2013, the alleged onset date." D.E. 11-1 at 24.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). The ALJ found that Plaintiff did suffer the following significant impairments: "obstructive sleep apnea (OSA), osteoarthritis, and plantar fasciitis." D.E. 11-1 at 24. The ALJ found that Plaintiff did not have severe liver disease or a severe mental impairment. *Id*. at 25.

At the third step, if a claimant's impairments meet the duration requirement and meet or equal the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, then she is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Plaintiff failed to meet this standard. D.E. 11-1 at 27.

If, as here, a claimant is not found disabled at step three, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the most work she can do despite her limitations. 20 C.F.R. §§ 404.1520(e), 1545(a)(1). The ALJ determined that Plaintiff had the RFC

> [T]o perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes or scaffolds and can no more than occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, or push/pull/handle objects with the non-dominant left hand. The claimant cannot perform any overhead reaching with the right, dominant arm. The claimant must avoid more than

---

To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry . . . the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id*. at 474 (internal citations omitted).

frequent exposure to wetness/humidity and avoid more than occasional exposure to vibrations from machinery or hand tools. The claimant will require one extra bathroom break per day for a total of five minutes.

D.E. 11-1 at 27. Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ failed to properly consider her depression and obesity and erred in weighing opinion evidence when formulating the RFC. D.E. 13-1.

At the fourth step, if a claimant's impairments do not prevent her from doing past relevant work (given the ALJ's assessment of her residual functional capacity), she is not disabled. 20 C.F.R. § 404.1520(f). The ALJ found that Plaintiff did not meet this standard because she was able to perform her past relevant work as a tour guide as it is generally performed. D.E. 11-1 at 30.

At the fifth step, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from doing other work that exists in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g). Although the ALJ found that Plaintiff was able to perform her past relevant work, she proceeded to step 5 and made an alternative finding that, based on Plaintiff's RFC, age, education, and past work, "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform." D.E. 11-1 at 31. The ALJ explained that she asked the VE at the hearing "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." *Id.* She accepted the VE's testimony that Plaintiff could perform the requirements of representative occupations such as office helper and inspector/tester. Plaintiff was therefore "not disabled" as defined by the regulations. *Id.*

Accordingly, on March 10, 2016, the ALJ issued her decision, finding that Plaintiff was not disabled, and was therefore ineligible for disability insurance benefits and supplemental

security income. *Id*. at 31-32. The Appeals Council denied Plaintiff's request for review on April 18, 2017. *Id*. at 5.

On June 20, 2017, Plaintiff initiated this civil action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's decision denying her application for disability insurance benefits. D.E. 2. Defendant, the Commissioner of Social Security ("the Commissioner"), filed an answer on September 8, 2017. D.E. 11. On November 7, 2017, Plaintiff filed a motion for judgment on the pleadings. D.E. 13. Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ made multiple errors when formulating it, and that these harmful errors warrant remand. D.E. 13-1. First, Plaintiff argues that the ALJ failed to consider her depression when formulating the RFC, despite being required under the regulations to do so. *Id*. at 8. Consideration of her depression, Plaintiff argues, would have reduced the number of jobs available to her. *Id*. at 11. Second, Plaintiff argues that the ALJ erred when she gave Dr. Thomas Howard's opinion less weight because he was an examining physician, saw Plaintiff the same amount as the consultative examiner, and provided treatment notes consistent with the record. *Id*. at 12. Giving Dr. Howard's opinion greater weight, Plaintiff argues, would have put her at sedentary work and, consequently, would have resulted in a finding of disability under the regulations. *Id*. Third, Plaintiff argues that the ALJ failed to mention or consider her obesity when formulating the RFC, and therefore the opinion was unsupported by substantial evidence and warrants remand. *Id*. at 13-14. Commissioner responded, and also moved for summary judgment. D.E. 17.

On November 14, 2017, the parties filed a joint motion, consenting to have the undersigned "conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings." D.E. 14. District Judge Van Tatenhove referred the matter to the

undersigned "to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73." D.E. 16.

## II. Framework for Judicial Review

The Social Security Act defines "disability" as "the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 169 (6th Cir. 2016) (quoting 42 U.S.C. § 423(d)(1)(A)). The burden is on Plaintiff to prove that she is disabled within the meaning of the regulations. *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016) (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010)). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citations omitted). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* at 545. However, courts are not to conduct a *de novo* review, resolve conflicts in

evidence, or make credibility determinations. *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the "evidence could reasonably support the conclusion reached[,]" then the ALJ's decision must stand, even if the evidence could also support another conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Disability determinations often hinge on the claimant's credibility. The ALJ must consider statements or reports from the claimant. 20 C.F.R. § 404.1529(a). To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether [ ] there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers*, 486 F.3d at 247 (citing 20 C.F.R. § 416.929(a) (internal citations omitted).[3] It is within the province of the ALJ, rather than the reviewing court, to evaluate the credibility of witnesses, including the claimant. *Id*. Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Id*. at 249.

### III. Analysis

Plaintiff argues that the ALJ's determination is not supported by substantial evidence because the ALJ failed to consider Plaintiff's non-severe depression when she formulated the RFC, improperly weighed Dr. Howard's medical opinion, and failed to mention Plaintiff's

---

[3] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

obesity in the opinion. After a thorough and careful consideration of the record, the undersigned **DENIES** Plaintiff's motion for judgment on the pleadings (D.E. 13) and **GRANTS** the Commissioner's motion for summary judgment (D.E. 17).

### A. Consideration of Plaintiff's Non-Severe Mental Impairments in Formulating RFC

The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC determination is a matter reserved for the ALJ. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ considers "the medical evidence, non-medical evidence, and the claimant's credibility." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x. 435, 443 (6th Cir. 2010). An ALJ's RFC finding will be upheld if it is supported by substantial evidence. *Johnson v. Colvin*, No. 7:15-039-DCR, 2016 WL 3257124, at *5 (E.D. Ky. June 13, 2016).

The RFC "considers only functional limitations and restrictions that result from an individual's medically determinable impairments or combination of impairments, including the impact of any related symptoms." SSR 96-8p(2), 1996 WL 374184, at *1. This includes "all . . . medically determinable impairments of which [the ALJ is] aware, including . . . medically determinable impairments that are not 'severe[.]'" 20 C.F.R. § 404.1545(a)(2); *see also LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013) ("[T]he ALJ's assessment of residual functional capacity reflects a claimant's functional capacity in light of all of his limitations, not just those that are 'severe.'"). The ALJ must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including [physical and mental functions]. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR

96-8p(4), 1996 WL 374184, at *1. Regarding mental abilities, the ALJ must assess "the nature and extent of [the] mental limitations and restrictions and then [determine the] RFC for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(c). A limited ability to perform mental activities may reduce the claimant's ability to do work. 20 C.F.R. § 404.1545(c). If there is no allegation of a physical or mental limitation of a specific functional capacity, and no information in the record that there is a limitation, the ALJ "must consider the individual to have no limitation or restriction with respect to that functional capacity." SSR 96-8p(3), 1996 WL 374184, at *1.

If the ALJ discusses an impairment in the step two severity analysis, and finds the impairment to be nonsevere, he or she must still consider the impact of any non-severe limitations in the RFC analysis. *Patterson v. Colvin*, 5:14-CV-1470, 2015 WL 5560121, at *2 (N.D. Ohio Sept. 21, 2015) ("Even when there is substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *7 (E.D. Mich. Feb. 27, 2015) ("The ALJ's analysis of Plaintiff's mental impairments at Step Two, while otherwise thorough, does not provide the Court with a basis to infer that Plaintiff's mental impairments, either singly or in combination with Plaintiff's other impairments, generated no work-place restrictions or limitations."). Remand may be necessary if it is unclear whether the ALJ considered an impairment in the RFC analysis. *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 191-92 (6th Cir. 2009). Boilerplate language will not suffice. *Workman v. Berryhill*, No. 7:16-261-DCR, 2017 WL 3880661, at *2 (E.D. Ky. Sept. 5, 2017) (rejecting boilerplate

language indicating ALJ considered all symptoms and remanding when ALJ failed to evaluate mental impairments in RFC analysis); *Johnson*, 2016 WL 3257124, at *3 (same).

However, if the ALJ finds that the claimant has at least one severe impairment, then he or she implicitly considers all impairments – severe and nonsevere – in the subsequent steps. *Scott v. Berryhill*, No. 5:16-CV-108-REW, 2017 WL 875480, at *3 (E.D. Ky. Mar. 3, 2017) (noting ALJ indicated careful consideration of entire record and all symptoms in decision and discussed nonsevere impairments during hearing). "[I]t is well settled that[ ] an ALJ can consider all the evidence without directly addressing in h[er] written decision every piece of evidence submitted by a party." *Id.* (quoting *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006)). An "ALJ's failure to cite specific evidence does not indicate that it was not considered." *Id.* (quoting *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)).

Plaintiff argues that the ALJ failed to mention her depression when determining the RFC, and instead "focused solely on [her] physical impairments . . . ." D.E. 13-1 at 9-10. Plaintiff notes that the ALJ "acknowledged that [she] would have mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace" at the step two severity analysis, but she argues that the ALJ "failed to account for them in formulating the RFC, because the RFC includes no mental limitations whatsoever." *Id.* at 10. Plaintiff argues that the ALJ's omission amounted to harmful error because the skills affected by Plaintiff's depression are required even in unskilled work. *Id.* at 11. "[T]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id.* (quoting SSR 85-15, S.S.A. 1985). If the ALJ had included her depression in the RFC, Plaintiff's argument goes, then

her prior work of a tour guide may have been eliminated (allowing Plaintiff to proceed to step five of the analysis and shifting the burden to the Commissioner) and would "severely limit the potential occupational base." *Id.* (quoting SSR 85-15). This prevents a proper review, according to Plaintiff, because "the Commissioner's late-tendered rationale for the ALJ's dismissal of Plaintiff's mental impairments would invite this Court to engage in impermissible *post hoc* rationalization for Agency action." *Id.* at 10 (citing *Berryhill v. Shalala*, 4 F.3d 993 (6th Cir. 1993)). Therefore, plaintiff urges the Court to remand. *Id.* at 11.

The Commissioner, on the other hand, argues that Plaintiff failed to meet her burden to prove that her non-severe depression resulted in any workplace limitations and, therefore, the ALJ did not fail to consider Plaintiff's depression in determining her RFC. D.E. 17 at 7. "Far from ignoring evidence relevant to Plaintiff's mental condition, the ALJ explicitly discussed it." *Id.* at 8. The Commissioner points to the ALJ's discussion of the effectiveness of Plaintiff's medication, Wellbutrin, and reported activity level, and argues that it was "legally sufficient to demonstrate that the ALJ considered Plaintiff's non-severe depression when she assessed her RFC . . . ." *Id.* "Plaintiff's suggestion that an ALJ must separately address every non-severe impairment within the RFC assessment regardless of whether it causes any workplace limitations in untenable." *Id.* Instead, the Commissioner argues that an "ALJ need only *consider* a claimant's severe and non-severe impairments when assessing her RFC." *Id.* at 9. "Here, the ALJ explicitly recognized the distinction between [the consideration required at the step two severity analysis and the RFC determination]. Plaintiff simply failed to meet her burden to prove that her mild depression . . . resulted in any workplace limitations that the ALJ was obligated to include in her RFC." *Id.* (internal citations omitted).

During step two of the analysis, the ALJ found that Plaintiff did not have a severe mental impairment. D.E. 11-1 at 25. When making this finding, the ALJ gave great weight to the medical source opinions of the state agency psychologists because they "also found no severe impairment" and "[t]heir medical source opinions [were] wholly consistent with the evidence of record." *Id*. The ALJ reasoned that Plaintiff "has no history of treatment by a mental health provider, although, she has a history of taking Wellbutrin and consultative examiner, M. Maude O'Neill, Ph.D., diagnosed [Plaintiff] as having a depressive disorder. Dr. O'Neill gave [Plaintiff] a Global Assessment of functioning of 65, indicating only mild limitations in functioning." *Id*. Further, "[Plaintiff] has no anxiety, depression, changes in personality, or change in social functioning upon examination in December 2014 and November 2015." *Id*. Finally, the ALJ concluded that Plaintiff's "medically determinable mental impairment of an affective disorder does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore non-severe." *Id*.

The ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders in section 12.00C of the Listing of Impairments, or the "paragraph B" criteria. 20 C.F.R., Part 404, Subpart P, App. 1. Regarding the first functional area, daily living, the ALJ found that Plaintiff had mild limitation because she is able to drive and run errands, groom herself independently, handle her money, manage her appointments and medications, help care for her grandchildren and pets, prepare simple meals daily, help with household chores, shop outside the home and online, and participate in recreational activities such as reading, watching television, attending church, and fishing. D.E. 11-1 at 26. Regarding the second functional area, social functioning, the ALJ similarly found that Plaintiff had mild limitation in this area because she spends time with others in social situations, interacts and

responds appropriately to co-workers, supervisors, and the public in a work setting, and did not report specific problems getting along with authority figures, co-workers, or the general public. *Id*. Regarding the third functional area, concentration, persistence, or pace, the ALJ determined that she had a mild limitation because she is able "to perform the plethora of daily tasks noted above." *Id*. Finally, the ALJ considered the fourth functional area, episodes of decompensation, and found that Plaintiff had no episodes of extended duration. *Id*. The ALJ ultimately concluded that "because [Plaintiff's] medically determinable mental impairment causes no more than 'mild' limitations in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area it is nonsevere." *Id*. at 26 (citing 20 C.F.R. 404.1520a(d)(1)). The ALJ's determination that Plaintiff's nonsevere mental impairment imposes no more than a mild limitation is supported by substantial evidence.

At the conclusion of the step two severity analysis, the ALJ explained,

> The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8P). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis.

*Id*. at 26-27.

The ALJ then determined Plaintiff's RFC. The ALJ noted "careful consideration of the entire record[,]" consideration of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[,]" and consideration of opinion evidence. *Id*. at 27. The ALJ explicitly stated that she considered whether a mental limitation existed that could reasonably be expected to produce Plaintiff's

symptoms, and then she considered the intensity, persistence, and limiting effects of those symptoms to determine the extent to which they limit Plaintiff's functioning. *Id*. The ALJ's RFC analysis focused primarily on Plaintiff's symptoms of physical impairments, *i.e.* pain in her joints, feet, hands, *etc*., rather than her mental impairments. However, the ALJ explicitly stated that that "Wellbutrin was reportedly helpful for depression." *Id*. at 29. When discussing Plaintiff's daily activities, the ALJ found that her "daily activities are significant, and are inconsistent with her allegations of symptoms so severe that she cannot engage in any time of work activity." *Id*. at 30. "She drives, shops, attends church and church activities, and cares for her grandchildren and pets." *Id*. The ALJ also discussed Plaintiff's mental impairment with her at the administrative hearing. *Id*. at 73. Although the RFC analysis focuses primarily on Plaintiff's physical impairments and only briefly mentions her mental impairment, the ALJ previously explained that the RFC reflected limitations from the mental impairment.

At first blush, it may appear that the language "the following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis" included in the ALJ's opinion (D.E. 11-1 at 26-27) is mere boilerplate. But, that language appears after a thorough discussion of limitations associated with the "paragraph B" criteria. *Id*. at 25-27. So the boilerplate characterization is not appropriate. The ALJ explicitly stated that limitations associated with Plaintiff's depression were considered in her RFC analysis. Requiring separate findings amounts to characterizing the purported boilerplate statement as necessarily false and, in this Court's view, would require an overly technical restatement of findings previously made by the ALJ.

**B.  The ALJ Properly Discounted the Medical Opinion of Dr. Thomas Howard**

The ALJ is required to consider every medical opinion in the record along with the rest of the relevant evidence.  20 C.F.R. § 404.1527(b)-(c).  A medical opinion of a source who has examined the plaintiff will receive more weight than the opinion of a source who has not examined the claimant.  20 C.F.R. § 404.1527(c)(1).  The regulations differentiate between treating sources and non-treating sources.  A treating source receives more weight than a non-treating source, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ."  20 C.F.R. § 404.1527(c)(2).  A treating source is defined as an acceptable medical source "who provides [ ], or has provided [ ], medical treatment or evaluation and who has, or has had, an ongoing treatment relationship [with the claimant]."  20 C.F.R. § 404.1527(a)(2).  The Social Security Administration will "consider that [the claimant has] an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that [the claimant sees], or [has] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s)."  20 C.F.R. § 404.1527(a)(2).

If the treating source's medical opinion regarding the nature and severity of the claimant's impairments is supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with the other substantial evidence in the record, then it receives controlling weight.  20 C.F.R. § 404.1527(c)(2).  However, if the treating source's opinion does not receive controlling weight, the ALJ considers the following factors when determining how much weight to give that source's opinion: (1) the length of the treatment relationship and

frequency of examination, (2) the nature and extent of the treatment relationship, (3) the amount of relevant evidence presented to support the opinion, (4) the consistency of the medical opinion with the record as a whole, and (5) the specialization of the source. 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6).

The ALJ may consider opinions from sources who are not acceptable medical sources. 20 C.F.R. 404.1527(f)(1). When doing so, the ALJ applies each factor discussed above on a case-by-case basis. "[A]n opinion from a medical source who is not an acceptable medical source . . . may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source." 20 C.F.R. § 404.1527(f)(1). For example, the opinion of a non-acceptable medical source who has seen the claimant over a longer period of time may outweigh the opinion of an acceptable medical source who has only seen the claimant once. *Id*. The ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning." 20 C.F.R. § 404.1527(f)(2).

Here, multiple medical sources provided opinions regarding Plaintiff's ability to perform work activities. Although not a treating source, the ALJ gave great weight to consultative examiner Dr. Nashaud Haziq's opinion because his "examination was more thorough than physical examinations by treating sources who barely mentioned any findings upon examination of the claimant's joints/extremities." D.E. 11-1 at 29. Dr. Haziq saw Plaintiff once. Dr. Haziq reported Plaintiff was able to get up and down from the examination table without difficulty, appeared comfortable sitting and lying down, had no respiratory abnormalities, had no limitations of the neck, arms, or hands, had no edema of the extremities, had no redness or warmth of any extremity, had normal grip strength in the hands and could make a fist, could pick

up coins and write with her dominant hand, had mild limitation of movement in the lumbar spine, had normal muscle strength, and had no neurological deficits. *Id.*; *see also* D.E. 11-1 at 487-89.

Dr. Thomas Howard, a rheumatologist, also saw Plaintiff once, on December 2, 2014. *Id.* at 740. Dr. Howard determined that Plaintiff had "chronic osteoarthritis" and presented with "multiple arthralgias[,]" and noted that she had primary biliary cirrhosis. *Id.* at 743. His differential diagnosis included "inflammatory arthropathy associated with [primary biliary cirrhosis], or connective tissue disease, less likely crystalline arthropathy[.]" *Id.* He ordered x-rays to determine the source of the arthralgias. Multiple x-rays of Plaintiff's hands, wrists, knees, and feet were reviewed, and detailed findings resulted in a diagnostic impression of "[n]o radiographic evidence of an inflammatory arthropathy" by the physician reviewing the x-rays, Dr. Jason Montgomery. *Id.* at 681-82.

Dr. Howard provided a medical source statement in which he opined that Plaintiff could not be reasonably expected to work an eight-hour day, five days per week, without missing more than two days per month due to her disabilities. *Id.* at 503. He noted that, while Plaintiff did not have any limitations sitting, she did have limitations with prolonged standing and walking, stooping, and climbing. *Id.* Further, he opined that, in an average workday, she could frequently carry one to five pounds, occasionally carry six to ten pounds, and could never carry more than eleven pounds. *Id.* She could continuously use her hands for gross manipulation, frequently use her hands for fine manipulation and raise her left arm over her shoulder, but could never raise her right arm over her shoulder. *Id.* Dr. Howard indicated that, in his opinion, Plaintiff's condition causes moderately severe pain, requires her to elevate her legs and lie down two to three times per day, and would require her to take unscheduled breaks during an eight-hour workday. *Id.* at

504.  He based his opinions on her impairments of primary biliary cirrhosis and inflammatory arthritis.  *Id*. at 503.

The ALJ gave little weight to Dr. Howard's medical opinion because "Dr. Thomas treated [Plaintiff] only one time and, even more notably, found no evidence of inflammatory disease – which leaves his opinion as to [Plaintiff's] limitation outside his area of expertise."  *Id*. at 29.  The ALJ incorporated some limitations regarding use of the upper extremities in the RFC.  *Id*.; *see also* D.E. 11-1 at 27 ("I find that [Plaintiff] has the residual functional capacity to . . . no more than occasionally . . . push/pull/handle objects with the non-dominant left hand.  The [Plaintiff] cannot perform any overhead reaching with the right, dominant arm.").

Plaintiff argues that the ALJ should have afforded more weight to Dr. Howard's opinion because "he was an examining physician and his opinion is consistent with his treatment notes and the record as a whole."  D.E. 13-1 at 12 (citing 20 C.F.R. § 404.1527).  Regarding whether Dr. Howard's opinion was outside of his area of expertise, Plaintiff notes that Dr. Howard diagnosed multiple arthralgias and chronic osteoarthritis, so, she argues, his opinion was within his area of expertise.  *Id*.  The Commissioner argues that "[t]he ALJ reasonably questioned whether Dr. Howard – who saw Plaintiff only once, in December 2014 – would have a longitudinal picture of Plaintiff's condition when he rendered his opinion[]" and "Dr. Howard's opinion was outside of his expertise and therefore due less weight."  D.E. 17 at 10.  Additionally, the Commissioner points out that Dr. Howard's "opinion was fundamentally inconsistent with his solitary examination note."  *Id*. at 10-11.

Dr. Howard is not a treating source.  Both parties acknowledge that he saw Plaintiff only one time before providing his medical opinion.  D.E. 13-1 at 12; D.E. 17 at 9.  There was no "ongoing treatment relationship" as required by 20 C.F.R. § 404.1527(a)(2).  Therefore, his

opinion is not due automatic controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). The ALJ properly weighed the relevant factors when determining how much weight to give Dr. Howard's opinion, and her determination that his opinion was due less weight is supported by substantial evidence in the record.

It is unclear whether Dr. Howard's opinion is outside of his area of expertise. The case relied upon by the Commissioner, *Hool v. Comm'r of Soc. Sec.*, No. 12-CV-10894, 2012 WL 6149403, at *9 (E.D. Mich. Dec. 11, 2012) is distinguishable because it discussed an opinion regarding mental limitations from a source who was not a psychiatrist. "Since Dr. Hissong is not a psychiatrist, the ALJ was entitled to discount his opinion on questions involving more mental rather than physical limitations." *Id*. Here, Dr. Howard is a rheumatologist and he provided an opinion regarding physical limitations resulting from inflammatory arthritis. This is much less attenuated from his expertise than the opinion in *Hood*. Plaintiff provides no support for her statement that Dr. Howard's diagnosis of inflammatory arthritis is within his area of expertise.

However, the ALJ also indicated in her determination that she discounted Dr. Howard's opinion because it relied on a diagnosis of inflammatory arthritis. D.E. 11-1 at 29 ("[E]ven more notably, [Dr. Howard] found no evidence of inflammatory disease."). Dr. Howard relied on a diagnosis that Plaintiff does not have. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc) (upholding ALJ's determination that medical source's opinion was "less than credible" because its many medical assessments were inconsistent). Although his differential diagnosis included inflammatory arthropathy and he relied upon this diagnosis when providing his medical opinion, the x-rays he requested ultimately found no evidence of that disease. *Compare* D.E. 11-1 at 743, 503, *with* D.E. 11-1 at 683. Contrary to Plaintiff's

argument, Dr. Howard's opinion is inconsistent with his own treatment notes, and was therefore due less weight. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). The ALJ correctly discounted Dr. Howard's medical opinion.

Plaintiff argues that Dr. Howard's opinion was consistent with the record as a whole. D.E. 13-1 at 12. However, the ALJ provided a lengthy discussion of Plaintiff's physical symptoms, Plaintiff's own testimony, medical source opinions, and other evidence throughout the RFC determination. *Id*. at 27-30. The ALJ's discussion is consistent with the record. This is certainly "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) Because the ALJ's determination is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Although it is unclear whether Dr. Howard's diagnosis was within his area of specialty, his opinion was inconsistent and relied upon a diagnosis that Plaintiff does not have. The ALJ's decision regarding the weight attributed to Dr. Howard's opinion was proper.

### C. Consideration of Plaintiff's Obesity

Obesity is defined as "a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). When establishing the existence of obesity, the ALJ will "rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height." *Id*. at *3. Although obesity is no longer considered a listed impairment, it is considered

a medical impairment, so it must be considered at each step of the ALJ's analysis. *Id.* at *1; *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016). This is because "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p, 2002 WL 34686281, at *1. Specifically, the ALJ must take into account "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment" and an individual's ability to sustain a function over time when formulating the RFC. *Id.* at *6.

However, the "ALJ is not required to use any 'particular mode of analysis' in assessing the effect of obesity. *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006)). "[T]he ALJ does not need to make specific mention of obesity if [s]he credits an expert's report that considers obesity." *Bledsoe*, 165 F. App'x at 412. If all of the evidence the ALJ relies on considers the claimant's obesity, then the ALJ will have satisfied the regulations. *Caldwell v. Berryhill*, No. 6:12-253-DCR, 2017 WL 957538, at *6 (E.D. Ky. Mar. 10, 2017) (upholding ALJ's decision, in part, because Plaintiff did not identify any additional limitations that should have been incorporated and ALJ considered medical evidence that took obesity into consideration.).

Plaintiff argues that the ALJ erred by failing to consider her obesity "anywhere in the decision" and "completely ignor[ing] it." D.E. 13-1 at 14. Therefore, Plaintiff concludes, the ALJ's decision is unsupported by substantial evidence and requires remand. *Id.* The Commissioner responds that remand is not warranted because the ALJ satisfied the regulations by crediting physicians who explicitly accounted for Plaintiff's obesity in rendering their opinions. D.E. 17 at 12. "These two doctors' examination findings and opinion reflected that Plaintiff did not experience greater limitations due to obesity than the ALJ ultimately

concluded." *Id*. Additionally, the Commissioner argues that Plaintiff "has not identified any additional limitations that should have been incorporated because of [her] obesity, but were not." *Id*. at 13 (quoting *Caldwell*, 2017 WL 957538, at *6). "That is, even if the ALJ should have more thoroughly discussed Plaintiff's obesity, any error would be immaterial because there is no evidence that Plaintiff's obesity limited her more than the ALJ concluded." *Id*.

At the outset, the Court notes that Plaintiff did not identify obesity as a condition that limits her ability to work in her Disability Report. D.E. 11-1 at 240 (identifying arthritis, high cholesterol, hyperthyroidism, primary biliary cirrhosis, depression, sleep apnea, "uses a CPAP[,]" back pain, plantar [fasciitis], and osteopenia). Additionally, Dr. Haziq and Dr. Brown explicitly discussed Plaintiff's obesity in their medical opinions. *See id*. at 127, 485. Dr. Haziq and Dr. Brown provided consistent opinions regarding Plaintiff's physical impairments.

The ALJ did not discuss Plaintiff's obesity in her determination. However, she gave great weight to opinions of medical sources who explicitly considered Plaintiff's obesity. D.E. 11-1 at 29 (giving great weight to the opinions of Dr. Haziq and Dr. Brown). Dr. Haziq specifically noted Plaintiff's obesity in his opinion; he described Plaintiff as a "48-year-old moderately obese female who presents today with a three-year history of pain in her middle and lower back." *Id*. at 485. Likewise, Dr. Brown also considered Plaintiff's weight. *Id*. at 127 (citing Dr. Ginny Gottschalk's description of Plaintiff's "abnormal weight gain" as an additional explanation for his RFC determination). Because the ALJ relied on opinions of medical sources who explicitly considered Plaintiff's obesity, she considered Plaintiff's obesity in formulating the RFC. *Caldwell*, 2017 WL 957538, at *6. Plaintiff has failed to show that the ALJ applied the law incorrectly or that the RFC was not supported by substantial evidence.

Regarding the first four steps of the analysis, Plaintiff carries the burden of proving that she is disabled within the regulations. *Hernandez*, 644 F. App'x at 474 (citing *Ealy*, 594 F.3d at 512). Plaintiff has failed to identify any additional limitations that should have been incorporated, but were not. This absence of elaboration "likely stems from the fact that [Plaintiff] failed to present evidence of any functional limitations resulting specifically from her obesity." *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004). There is "scant evidence" in the record that Plaintiff's obesity causes her physical limitations. *See Grech v. Colvin*, No. 2014-21 (WOB-CJS), 2015 WL 2354802, at *3 (E.D. Ky. May 15, 2015) ("In fact, other than a passing reference to Plaintiff being obese or providing a record of her height, weight and BMI on her medical charts, her providers provided no specific discussion of Plaintiff's obesity or how it impacts her functioning."). "[A]ny findings regarding the effects of obesity must be based on evidence in the record." *Gipson v. Colvin*, No. 5:15-336-DCR, 2016 WL 4473796, at *3 (E.D. Ky. Aug. 22, 2016). The ALJ may not make assumptions about the severity or functional effects of obesity, otherwise he or she would be required to render a medical opinion, which is not permitted. *Id.* (citing *Simpson*, 344 F. App'x at 194). The only controlling case relied on by Plaintiff, *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956 (6th Cir. 2015), is distinguishable because the plaintiff in that case previously received disability benefits due to his morbid obesity and the ALJ determined that his obesity was a severe impairment. *Id.* at 957. There is no allegation, or indication, that Plaintiff is morbidly obese or that her mild-to-moderate obesity caused any impairments.

Here, the only sources (Drs. Haziq and Brown) who mentioned Plaintiff's obesity when providing their medical opinions casually referenced it. *See* D.E. 11-1 at 127 ("abnormal weight gain"); D.E. 11-1 at 485 ("[T]he claimant is a 48-year-old moderately obese female . . . .").

During the administrative hearing, Plaintiff did not identify it as a complaint and the ALJ did not discuss her height or weight. While Plaintiff correctly notes that her medical records mention her obesity, these references are passing and do not indicate any functional limitations. *See, e.g.*, *id.* at 401 (indicating diagnosis of obesity with BMI of 30.0-34.9); D.E. 11-1 at 558-59 (indicating BMI of 35.14 and prescribing medication for obesity); D.E. 11-1 at 587 (identifying obesity with BMI between 30.0-34.9 under "Problem List/Past Medical"); D.E. 11-1 at 590 (same). Each of the passing references Plaintiff cites indicated mild to moderate obesity, and did not indicate any limitations resulting from her obesity. Therefore, the ALJ properly applied the correct legal standards and substantial evidence supports the ALJ's decision.

## V. Conclusion

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1)     Plaintiff's motion for judgment on the pleadings (D.E. 13) is **DENIED**;

(2)     Defendant's motion for summary judgment (D.E. 17) is **GRANTED**;

(3)     A judgment shall be entered concurrently with this opinion.

This the 10th day of May, 2018.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**